## CHERRY B. JOHNSON v. STATE.

No. A—9474. July 22, 1938.

(81 P. 2d 872.)

Davis & Patterson, of Wewoka, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, J. Plaintiff in error, Cherry B. Johnson, was convicted in the county court of Seminole county upon information charging a violation of section 10329, St. 1931 (47 Okla. St. Ann. § 104), providing in substance that whenever a motor vehicle strikes any person, or collides with any vehicle containing a person, the driver of such motor vehicle shall stop, and shall give to the person struck or to the occupants of the other vehicle, if requested, the number of the motor vehicle, the name of the owner and of the passengers, with the address of each.

Motion for new trial duly filed, was on November 23, 1937, overruled. Thereupon the court rendered judgment in pursuance of the verdict and sentenced the defendant to pay a fine of $100 and the costs.

The information jointly charged that Cherry B. Johnson and Herbert Dunlap did unlawfully drive one Ford truck upon and along Hitchiti street, in the city of Wewoka, and did strike one Frank Pittman, and after said accident did then and there fail and refuse to stop the said motor vehicle and furnish such information as is required by law.

Upon arraignment the state dismissed the case as to the defendant, Herbert Dunlap, and by leave of court endorsed his name on the information as a witness for the state.

The errors assigned and relied on for a reversal of the judgment question the sufficiency of the evidence to sustain the verdict.

The testimony on the part of the state was substantially as follows:

Frank Pittman testified that on the date alleged he parked his car on Park street and Hitchiti and attended services at the nearby Baptist Church; that when they started taking up the collection he left and went to his car, he told the woman with him to get in and unlock the other door; that he saw a truck coming and as it passed it knocked him against the fender and carried him to the end of his car where he fell; that he kept hallowing for them to stop, and the truck went dead and stopped about ten feet beyond his car, and he hallowed for them to come and help him, but they cranked it up and went on; that the truck had side boards and had the name "C. B. Johnson" on the side. That this happened about 9:30 p.m.

Elizabeth Sewell testified that she was with Frank Pittman at church on the night of the day alleged; that she witnessed the accident. She further testified:

"After church I came out and we went to get in the car and just as I got in the car Cherry Johnson's truck was coming around the corner of Hitchiti; Mr. Pittman was coming around the car to get in and the truck knocked him down and I hallowed 'stop', I got out of the car, Frank Pittman was in the ditch; I saw Cherry Johnson and a woman on the truck; Johnson had a big white hat on."

That the truck had no tail lights and the front lights were dim. That she is well acquainted with Cherry Johnson, and she is sure that he was driving this truck at the time Mr. Pittman was injured.

William Gibbs testified that he came out of church and saw a man falling and a woman was calling to come and help him up. He recognized the truck, a two ton Model V Ford.

The name "C. B. Johnson" was on the side of the truck, that he didn't know who was driving the truck.

Frank I. Johnson testified that he was at the Baptist Church on Hitchiti and saw a truck passing as Frank Pittman was getting in his car and the truck struck him. It killed the motor, and the truck stopped. As quick as they could start the motor the truck went on; that he heard the woman with Frank Pittman call to them to stop and ask them to come back and help.

Herbert Dunlap testified that on the 23rd day of May he drove a truck for Cherry Johnson; that he finished driving for them about 8 o'clock; they had been on a fishing trip with a group of people in the truck, it was a V8; when he finished driving he got out at his home 108 South Hitchiti Street and Cherry Johnson and some Indian woman was in the truck; that Cherry drove the truck away; that they went south from his house to the corner, then turned and went north; that he lives south from the Baptist church about three blocks; that Cherry Johnson was wearing a khaki suit and a big white hat.

At the close of the testimony for the state, the defendant interposed a demurrer thereto and moved for a directed verdict of acquittal, on the ground that the evidence was insufficient to prove the offense charged, which was overruled.

The defendant testified as a witness in his own behalf and in the course of his testimony stated that he remembers the night that he is charged with running into somebody up at the church, on Park and Hitchiti streets; that he did not drive his truck there that night, and his truck did not strike any person that night; that he was in his car when Herbert Dunlap got out at his home that night; that Herbert Dunlap was driving the car until he got out; that when they left Herbert Dunlap's house he was in the front seat with a woman called Georgia; that he proposed to Georgia to take a drive, and she said she didn't care; that

this was about 8:30 or 9 o'clock; that they drove out to a farm that he had rented, two or three miles from town; that when they went to the house the folks were not there, that they sat in the car, he don't know how long, and finally Georgia said she was getting sleepy and asked to be taken back.

He further testified:

"I came back to the highway and came until I hit Seminole street east of the Armory building, turned and went north down on Cedar and let her out at Carter's hotel, on Cedar street. I didn't have any business one block north and I didn't drive the truck up there for any purpose. I didn't hit anybody, if I did I would stop and see about it."

On cross examination he stated that his truck was a V8 '26 model that had his name, "C. B. Johnson", on it.

At the close of all the testimony the defendant again moved for a directed verdict of acquittal, which was overruled.

It is urged that the court erred in refusing to advise the jury to return a verdict of acquittal because the evidence was not sufficient to warrant a conviction, in that the evidence was insufficient to show request made or refusal to furnish information as by law required.

We think the foregoing statement shows that the evidence sustains the verdict. It appears that there is evidence tending to sustain every essential allegation of the information.

It has been the uniform holding of this court that where there is competent evidence supporting the theory of the state, and there is other evidence conflicting therewith, the issues so raised are solely for the jury under proper instructions of the court, and the finding of the jury on such issues will not be disturbed by this court.

The case having been submitted to the jury upon correct instructions, it was the exclusive province of the jury

to pass upon the credibility of the witnesses and the weight of the testimony.

Finding no error in the record, and it appearing that the defendant had a fair and impartial trial, the judgment appealed from is affirmed.

DAVENPORT, P. J., and BAREFOOT, J., concur.